**CHASE NAT. BANK OF CITY OF NEW YORK et al. v. MOBILE & O. R. CO. et al.**

No. 56.

District Court, S. D. Alabama, S. D.

Feb. 26, 1941.

Gordon, Leigh, Leigh & Gordon, of Mobile, Ala., for Gatch, Tennant & Co.

S. R. Prince and Henry L. Walker, both of Washington, D. C., for Mobile & Ohio R. Co.

Smith & Johnston, of Mobile, Ala., and Mitchell, Taylor, Capron & Marsh, of New York City, for City Bank Farmers Trust Co., as trustee under Mobile & Ohio R. Co.'s general mortgage dated May 15, 1888.

Harry T. Smith & Caffey, of Mobile, Ala., and Larkin, Rathbone & Perry, of New York City, for Central Hanover Bank & Trust Co., as trustee under Mobile & Ohio R. Co.'s Montgomery Division first mortgage dated February 1, 1897.

Rushton & Rushton, of Montgomery, Ala., and Stewart & Shearer, of New York City, for United States Trust Co. of New York, as successor trustee under Mobile & Ohio R. Co.'s trust indenture dated September 1, 1930.

Rushton & Rushton, of Montgomery, Ala., and Mudge, Stern, Williams & Tucker, of New York City, for Chase Nat. Bank of City of New York and Carl E. Buckley, as successor trustees under Mobile & Ohio R. Co.'s refunding and improvement mortgage dated as of July 1, 1927.

N. E. Stallworth, of Mobile, Ala., for First Nat. Bank of Mobile, Mobile, Ala., as successor trustee under Mobile & Bay Shore Ry. Co.'s first mortgage dated May 1, 1899.

George W. Jaques, of New York City, for Frederic W. Ecker, Chairman, Bondholders' Protective Committee, No. 1 Madison Ave., New York, N. Y.

N. E. Stallworth, of Mobile, Ala., for Herbert C. Brown, Alfred L. Staples, and Sidney Lowenstein, as Bondholders' Protective Committee, Mobile, Ala.

Smith & Johnston, of Mobile, Ala., and S. R. Prince, S. S. Alderman, and Henry L. Walker, all of Washington, D. C., for Southern Ry. System.

Carter, Ledyard & Milburn, of New York City, for Guaranty Trust Co. of New York.

Pillans, Cowley & Gresham, of Mobile, Ala., for Railroad Credit Corporation.

Coleman, Spain, Stewart & Davies, of Birmingham, Ala., for United States Fidelity & Guaranty Co.

Lyons & Thomas, of Mobile, Ala., for Hudson County Nat. Bank.

Benners, Burr, McKamy & Forman, of Birmingham, Ala., for Illinois Cent. R. Co.

Mahorner & Mahorner, of Mobile, Ala., for Mrs. Alleen G. Barker.

Wm. McLeod, of Mobile, Ala., for First Nat. Bank of Mobile, as trustee for C. E. Ervin and T. M. Stevens, as receivers.

Henry L. Walker, of Washington, D. C., for Georgia Industrial Realty Co.

E. M. Goodman, of Milwaukee, Wis., and Howell & Johnston, of Mobile, Ala., for Edith C. Goodman, Mitchell Street State Bank, and Mason Loundy.

Smith & Johnston, of Mobile, Ala., and Mitchell, Taylor, Capron & Marsh, of New York City, for City Bank Farmers Trust Co., as trustee under Mobile & Ohio R. Co.'s debenture trust deed dated May 1, 1879.

Milbank, Tweed & Hope, of New York City, for Reorganization Committee.

J. N. Flowers, of Mobile, Ala., and Beekman, Bogue, Stephens & Black, of New York City, for Gulf, M. & N. R. Co.

Francis H. Inge, of Mobile, Ala., for Gulf Terminal Co.

Carl Fox, of Mobile, Ala., for C. E. Ervin and T. M. Stevens, receivers of Mobile & O. R. Co.

C. M. Clay and A. Marvin Braverman, both of Washington, D. C., and Nicholas E. Stallworth, of Mobile, Ala., for Reconstruction Finance Corporation.

ERVIN, District Judge.

On a bill filed in June, 1932, against the Mobile & Ohio Railroad Company by a general creditor, a receiver was appointed by the Court to take charge of and operate the railroad because of its insolvency, and to protect and preserve the property.

The receivers continued to operate it until August, 1940. About 1938, negotiations looking to a reorganization of the railroad began and ultimately brought about a consolidation of the Mobile & Ohio and the Gulf Mobile & Northern Railroads. In order to carry out the plan, the properties of the Mobile & Ohio Railroad were sold under foreclosure proceedings begun by each of the mortgage trustees, and consolidated under orders of the Court.

The purchase price was $13,411,000, which included the property covered by all three of the mortgages and also a comparatively small amount of property not covered by any of the mortgages.

The sale included $1,898,875.87 of cash then in the hands of the receivers.

The Mobile & Ohio Railroad made three mortgages on its properties to secure the bondholders. While some of these mortgages cover the same property, each one gives a first lien on certain property.

In the instant case there was no agreement as to fees between the attorneys, notice of the hearing was given, the Reconstruction Finance Corporation was allowed to intervene and was heard, testimony was taken, oral argument was heard, and elaborate briefs filed and considered by the Court.

Many of the cases cited were under the Bankruptcy Act and involved only reorganization proceedings. Here many of the services claimed were rendered in the receivership proceedings prior to any attempt at and pending consolidation between the two railroad companies.

■ Much has been said, both in the oral argument and in the briefs, about the hours of service of the attorneys. As I look at it, the hours of work can be looked at as showing the service was long drawn out, but is a poor yardstick. To use the hours as a base must concede that each hour of service was of the same approximate value. which every judge and every lawyer knows is not true.

Again some of the cases show that some judges are jealous of an attorney being paid at a rate of pay higher than the judge. Judges are paid whether they are working or idle, while the attorneys are supposed to be paid only for the time they are working, they are not employed for a period or for life. Again much of a judge's time at work is not spent on matters of large interest or great value, so the comparison of the rate of pay while the lawyer is working on an important case where large interests are at stake, is not fair.

■ I have considered the time consumed, the skill shown, the sums involved, the risk involved, the experience and standing of the attorneys, the results accomplished, and the fact that the principal firms employed resided in New York and the litigation was had in Mobile, but the consultations and advice given was to the client in New York, the attorneys had to leave their offices and come to Mobile and be away from their place of business for considerable periods of time while attending the hearings both before the Court and the Commissioner.

These properties. have been sold under an order of this Court, the purchase price to be allocated among the various mortgages so that after all the charges against the portion allocated to each of such mortgages have been paid, the balance should be credited to the bonds secured by such mortgage. Each of these mortgages provides for the payment of the fees, costs and expenses of the trustees provided for in the mortgage. Each mortgage also authorizes the trustee to employ attorneys where necessary, and such trustees' fees and expenses, and the attorneys' fees are given priority over the claims of the bondholders.

No objection has been filed to the expenses of the attorneys as proven, so they will be paid.

No bondholder, as such, has filed any objection to the amount claimed by the attorneys and trustees as fees. The only objection is made by the Gulf Mobile & Ohio, the purchaser of the property at such sale.

The Court is called on to fix a reasonable fee for legal services rendered to each trustee for the bondholders, represented by such trustee, also for services rendered by the Reorganization Committee and its attorneys, also to fix the amount of the fees and expenses to be allowed to the various trustees under the mortgages.

It is contended that the Court should not fix the amount of fees and costs beyond the amounts suggested by the Reconstruction Finance Corporation in their agreement with the Gulf Mobile & Ohio, and the Borah Bill and the report of the Committee on Judiciary is cited.

A part of that report as quoted states: "Where receivership and bankruptcy proceedings are conducted at arms length, and decisions are made after opposing interests are heard, suspicion and doubt as to the reasonableness of the compensation authorized and the proper discharge of the obligations of the bench and bar will be avoided."

Each mortgage trustee and the reorganization trustee being located in New York naturally employed a New York firm to represent them, and such firm employed local firms where the litigation was pending, to aid them. Proof was offered as to the value of the services of the New York firms and also of the local firms. I do not propose to apportion the amount allowed for legal services among such firms, but will fix one sum as allowed for legal services rendered to each trustee, leaving the apportionment of such sums to be agreed on by such attorneys.

I allow the City Bank Farmers Trust Company a fee for services rendered, $17,500, and their expenses incurred, $7,009.88.

To the attorneys representing such Bank, a fee of $60,000.

I allow the Chase National Bank a fee for services rendered, $15,000, and their expenses incurred $12,883.84.

To the attorneys representing such Bank, a fee of $65,000.

I allow the Central Hanover Bank & Trust Company a fee for services rendered, $7,000, and their expenses incurred, $2,874.06.

To the attorneys representing such Bank, a fee of $20,000.

I allow the United States Trust Company a fee for services rendered, $2,500, and their expenses incurred, $125.22.

To the attorneys representing such Bank, a fee of $3,000.

I allow E. H. Leslie for services rendered as a member of the Reorganization Committee, $5,000. To the Reorganization Committee its expenses, $51,934.01.

To Milbank, Tweed & Hope, $50,000 as a fee for services rendered to the Reorganization Committee.